FILED
DISTRICT COURT OF GUAM
JUN 12 2019
JEANNE G. QUINATA
CLERK OF COURT


1  SHAWN N. ANDERSON
   United States Attorney
2  LAURA C. SAMBATARO
   Assistant U.S. Attorney
3  Sirena Plaza, Suite 500
   108 Hernan Cortez Avenue
4  Hagåtña, Guam 96910
   PHONE: (671) 472-7332
5  FAX: (671) 472-7215

6  Attorneys for the United States of America

7  IN THE UNITED STATES DISTRICT COURT

8  FOR THE TERRITORY OF GUAM

9  UNITED STATES OF AMERICA,            CRIMINAL CASE NO. 19-00025

10             Plaintiff,

11     vs.                              **PLEA AGREEMENT**

12  JOEL PO YMBALLA,

13             Defendant.

14

15     The United States and Defendant, JOEL PO YMBALLA, enter into the following plea

16  agreement:

17                           **Charge and Penalties**

18     1. Defendant agrees to waive indictment and enter a guilty plea to an information

19  charging him with Conspiracy to Import Fifty or More Grams of Methamphetamine

20  Hydrochloride, in violation of 21 U.S.C. §§ 952(a), 960(a), 960(b)(1)(H), and 963 and 18 U.S.C.

21  § 2.

22     2. Defendant understands and acknowledges the following:

23         (a) A conviction for Conspiracy to Import Fifty or More Grams of

24  Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 952(a), 960(a), 960(b)(1)(H), and

PLEA AGREEMENT - 1

963 and 18 U.S.C. § 2 carries a maximum penalty of not less than ten years imprisonment and not more than life imprisonment, a $10,000,000 fine, or both, at least a five-year period of supervised release, and a $100 special assessment. In addition to these maximum penalties, any violation of a supervised release order could lead to an additional term of up to five years imprisonment, pursuant to 18 U.S.C. § 3583(e)(3). Defendant agrees to pay the $100 special assessment at or before sentencing.

(b) The Defendant understands that by entering this plea of guilty the Defendant may no longer be eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Further, the Court may deny the Defendant's eligibility to any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

### Voluntariness & Waiver of Trial Rights

3. Defendant affirms that he has read this plea agreement and fully understands it. Defendant acknowledges that he enters this plea agreement and his decision to plead guilty voluntarily, and not because of any force, threats, promises or inducements, apart from the promises and inducements set forth in this plea agreement. He agrees to plead guilty because he is in fact guilty of the charged offense.

4. Defendant acknowledges that he understands that by entering a plea of guilty, he is waiving – that is, giving up – the following rights guaranteed to him by law and by the Constitution of the United States:

    (a) the right to plead not guilty and to persist in a plea of not guilty;

    (b) the right to a jury trial;

PLEA AGREEMENT - 2

(c) the right to be represented by an attorney and, if necessary, to have the Court appoint counsel at trial and all stages of the proceedings;

(d) the right at trial to confront and cross-examine witnesses against him;

(e) the right to remain silent at trial, with such silence not being used against him in any way;

(f) the right, should he choose, to testify on his own behalf and to present evidence;

(g) the right to compel witnesses to appear at such a trial and to have them testify on his behalf;

(h) the right not to be prosecuted except by an indictment returned by a grand jury.

Defendant understands that any statement he gives under oath in connection with this guilty plea may be used against him by the United States in a prosecution for perjury or false statement.

## **Elements of the Offense & Factual Basis**

5. Defendant understands and agrees that to establish the offense of Conspiracy to Import Fifty or More Grams of Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 952(a), 960(a), 960(b)(1)(H), and 963, and 18 U.S.C. §2, the United States must prove each of the following elements beyond a reasonable doubt:

First: from on or about January 1, 2017 and continuing to on or about June 24, 2017, there was an agreement between two or more persons to commit the crime of importation of fifty (50) grams and more of methamphetamine hydrochloride (ice); and

Second: the defendant became a member of the conspiracy knowing of at least one of its objects and helping to help accomplish it.

6. The United States and Defendant stipulate and agree to the following facts:

PLEA AGREEMENT - 3

(a) Defendant was born in 1970 and is a citizen of the United States.

(b) Since on or about January, 2017, Defendant JOEL PO YMBALLA (YMBALLA) had an agreement with others, including Fritz Ganzon, Mike Usalla and Danny Corpuz, Jr. and Danvic Samson, to import methamphetamine hydrochloride (ice) to Guam from the Philippines for distribution on Guam. Fritz Ganzon recruited YMBALLA to travel to the Philippines to import a kilogram of methamphetamine hydrochloride to Guam. YMBALLA'S travel expenses were to be paid by Ganzon. The methamphetamine was to be delivered to Ganzon and YMBALLA by Philippine supplier Danny Corpuz, Jr. aka Danvic Samson.

(c) On or about May 1, 2017, Ganzon informed YMBALLA that he planned to smuggle a kilogram of methamphetamine into Guam. Ganzon and YMBALLA agreed that YMBALLA would travel to the Philippines with Ganzon in order to "shadow" or watch out for him. YMBALLA and Ganzon agreed that after the drug was successfully smuggled into Guam, they would give the methamphetamine to Efren Bataclan, a drug distributor for Michael Usalla. Ganzon gave methamphetamine to YMBALLA to smoke.

(d) On May 18, 2017, Ganzon gave YMBALLA $400 to purchase round trip airline tickets at the Philippine Airlines office, Micronesia Mall, Guam. YMBALLA and Ganzon purchased roundtrip airline tickets departing Guam for the Philippines on June 9, 2017 and returning to Guam on June 24, 2017.

(e) On June 9, 2017, YMBALLA met Ganzon met at the Guam International Airport. Ganzon gave YMBALLA $9,000 in U.S. currency, instructing him to carry the money to the Philippines and to give the money to him when they landed. YMBALLA and Ganzon departed Guam on Philippines Airlines flight No. 111. YMBALLA gave Ganzon the money upon their arrival in the Philippines. While in the Philippines, Ganzon paid for the hotel costs, lodging and other travel expenses for YMBALLA and himself. Ganzon also paid for methamphetamine

PLEA AGREEMENT - 4

which he and YMBALLA smoked.

(f) YMBALLA and Ganzon met with Philippine drug supplier, Danvic Samson who provided them with a kilogram of methamphetamine hydrochloride. The methamphetamine was individually wrapped in 23 clear cellophane plastic bundles and concealed in nine Philippine snack boxes. Ganzon and Danvic Samson placed the snack boxes containing the methamphetamine into YMBALLA'S suitcase.

(g) On June 24, 2017, YMBALLA and Ganzon traveled from the Philippines to Guam U.S.A. on Philippines Airlines Flight No. 110. A drug detection dog alerted to the presence of drugs in YMBALLA'S suitcase. YMBALLA admitted "… it wasn't supposed to happen like this." YMBALLA sent money approximately seven times to Danny Corpuz, Jr., and Danvic Samson using Western Union locations located at the A & A Pawnshops in Harmon and Dededo, Guam.

(h) The methamphetamine was submitted to the Drug Enforcement Administration Southwest Laboratory for analysis and resulted in a weight of 969.5 grams of d-methamphetamine hydrochloride with a 98% purity, "Ice," for purposes of the Sentencing Guidelines, means a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity.

(i) The parties agree that this stipulated statement of facts is sufficient to support Defendant's guilty plea. It is made for that limited purpose and does not contain all facts relating to the underlying criminal conduct.

### Sentencing Guidelines & Procedures

7. Defendant understands and acknowledges that:

(a) The Sentencing Guidelines apply in this case. In determining a sentence, the Court is obligated to calculate the applicable sentencing guideline range and to consider that

PLEA AGREEMENT - 5

range, possible departures or variances under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);

(b) The United States will make its full discovery file available to the Probation Office for its use in preparing the presentence report;

(c) The Court will rely on the facts established in this case – including, but not limited to, the facts Defendant stipulates to in this plea agreement – in determining the applicable offense level and resulting guideline range;

(d) Sentencing discussions between Defendant and defense counsel or between defense counsel and the U.S. Attorney's Office are not part of this plea agreement, and Defendant is not relying on the possibility of any particular guideline range or sentence based on any such discussions;

(e) No promises or guarantees have been made to Defendant regarding either the guideline range or the sentence that will be imposed. The Court is not required to follow the Sentencing Guidelines or to accept any sentencing recommendations made by the United States or Defendant, and the Court may impose any sentence up to and including the maximum penalties set out above. Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, if the Court does not accept a sentencing recommendation made by the United States, Defendant nevertheless has no right to withdraw his guilty plea.

### Cooperation

8. Defendant agrees to make a full, complete and truthful statement regarding his involvement in criminal conduct, as well as the involvement of all others known to him. Defendant agrees to testify fully and truthfully at any trials or hearings. Defendant understands that this plea agreement is not conditioned on the outcome of any trial. Defendant further understands, however, that this plea agreement is contingent on complete and truthful testimony

PLEA AGREEMENT - 6

by Defendant in response to questions asked by the Court, the prosecutor, or lawyers for any party.

9. If Defendant provides self-incriminating information as part of his cooperation regarding the unlawful activities of others, the United States agrees not to use such information against Defendant at his sentencing. Such information may be revealed to the Court but shall not be used against Defendant in determining Defendant's sentence range. There shall be no such restrictions on the use of information: (a) previously known to law enforcement agencies; (b) revealed to law enforcement agencies by, or discoverable through, an independent source; (c) in a prosecution for perjury or giving a false statement; or (d) in the event there is a material breach of this agreement by Defendant.

10. Defendant understands and agrees that his sentencing date may be continued by the Court until after the indictment and trial of others, so as to enable the United States and the Court to assess Defendant's cooperation.

### Agreements of the United States

11. The United States agrees to recommend that the Court, in determining Defendant's sentencing guideline range, apply the maximum available reduction for acceptance of responsibility. This recommendation, however, is based on facts currently known to the United States and is contingent on Defendant accepting responsibility according to the factors set forth in § 3E1.1 of the Sentencing Guidelines. The United States is free to withdraw this recommendation if Defendant has previously engaged in any conduct which is unknown to the United States and is inconsistent with acceptance of responsibility, or if he engages in any conduct between the date of this plea agreement and the sentencing hearing which is inconsistent with acceptance of responsibility.

12. The United States agrees to recommend at sentencing that the Court impose a

PLEA AGREEMENT - 7

sentence within the applicable guideline range. If, however, the United States determines that Defendant has provided substantial assistance in the investigation or prosecution of another person, the United States agrees to move the Court at sentencing, pursuant to § 5K1.1 of the Sentencing Guidelines, to impose a sentence below the otherwise applicable sentencing guideline range. The determination of whether defendant has provided such substantial assistance rests entirely within the discretion of the United States Attorney's Office. Defendant acknowledges that even if the United States makes such a motion, the Court is not required to reduce Defendant's sentence.

### Financial Disclosure Obligations

13. Defendant agrees to submit to the U.S. Attorney's Office, within three weeks of the execution of this plea agreement, a complete, accurate and truthful financial statement and accompanying releases, in a form it provides and as it directs. Defendant agrees to disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. Defendant authorizes the U.S. Attorney's Office to obtain a credit report on him to evaluate his ability to satisfy any financial obligation imposed by the Court.

14. Defendant understands and agrees that any monetary penalties imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States, pursuant to 18 U.S.C. § 3613. Defendant understands that, by law, interest accrues on any remaining balance of the debt. Defendant agrees not to dissipate assets. If Defendant is financially unable to immediately pay any monetary penalties in full, Defendant agrees: (a) to cooperate with the United States Attorney's Office; (b) to provide updated financial statements upon request by the United States Attorney's Office and to keep the office advised about Defendant's current address; and (c) for his debt to be placed on the Treasury Offset Program

PLEA AGREEMENT - 8

and any tax refund/rebate offset program existing in his state of residency. Defendant understands that any funds captured by an offset program will be paid towards his monetary penalties, but does not relieve her of his obligation to pay the monetary penalties in full.

### Consequences of Breach

15. Defendant agrees that if he is deemed by the Court to be in material breach of any of his obligations under this agreement: (a) Defendant shall not be entitled to withdraw his plea of guilty made in connection with this agreement; (b) the United States may, in its discretion and at its option, declare null and void any of its obligations under this agreement; and (c) the United States may recommend whatever sentence it may deem appropriate. The issue of whether Defendant is in material breach of this agreement shall be determined by the Court in a proceeding at which the United States shall be required to establish breach by a preponderance of the evidence. Defendant understands and agrees that the Federal Rules of Evidence shall not apply at any such hearing, and that the United States may rely at the hearing on any statements or evidence Defendant may have given during cooperation with law enforcement.

### Waiver of Post-Sentencing Rights

16. Defendant voluntarily, knowingly and intelligently waives any right to appeal or to collaterally attack any aspect of his conviction including, but not limited to, any pretrial dispositions of motions and other issues. Defendant acknowledges and agrees that this waiver shall result in the dismissal of any appeal or collateral attack Defendant might file challenging his conviction or sentence in this case, other than an attack based on alleged ineffective assistance of counsel, alleged involuntariness of the Defendant's guilty plea, or alleged prosecutorial misconduct.

### Consequences of Withdrawal of Guilty Plea or Vacating of Conviction

17. Defendant agrees that if he is allowed to withdraw his guilty plea or if any conviction

PLEA AGREEMENT - 9

entered pursuant to this agreement is vacated or rendered invalid for any reason, the Court shall, at the request of the United States, reinstate any charges that were dismissed as part of this agreement. Defendant also agrees that within six months after the date the order vacating or invalidating Defendant's conviction or allowing him to withdraw his guilty plea becomes final, the United States may file additional charges against Defendant relating directly or indirectly to the conduct underlying the guilty plea. Defendant waives his right to challenge any such additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**Completeness and Effect**

18. Nothing in this plea agreement shall bind any federal, state or local districts, jurisdiction or law enforcement agency, other than the United States Attorney for the Districts of Guam and the Northern Mariana Islands.

19. Defendant acknowledges that this is the only plea agreement in this case. This plea agreement cannot be modified other than by a writing signed by all parties, or by a modification acknowledged by all parties on the record in Court.

DATED: 7 JUNE 2019

JOEL PO YMBALLA
Defendant

DATED: 7 JUNE 2019

JEFFREY A. MOOTS
Attorney for Defendant

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the Northern Mariana Islands

DATED: 6/12/19

By: _____ for
LAURA C. SAMBATARO
Assistant U.S. Attorney

PLEA AGREEMENT - 10